442 So.2d 1078 (1983)
OLD REPUBLIC INSURANCE COMPANY, a Foreign Corporation, Petitioner,
v.
The Honorable Lewis B. WHITWORTH, As Circuit Judge of the Eleventh Judicial Circuit, in and for Dade County, Florida, Respondent.
No. 83-1911.
District Court of Appeal of Florida, Third District.
December 20, 1983.
Greene & Cooper and Joan M. Bolotin and Robyn Greene, Mottlau & Wakefield, Miami, for petitioner.
Horton, Perse & Ginsberg and Mallory H. Horton, Miami, for respondent.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Old Republic Insurance Company, a compensation carrier, petitions for a writ prohibiting the respondent judge from exercising jurisdiction over a suit brought by a workers' compensation claimant against it for "gross negligence, outrage and punitive damages" arising out of the carrier's alleged willful breach of its obligations to make payments due the claimant under the Workers' Compensation Act. We grant the petition.
The claimant, one Robert Bird, filed compensation claims for work-related disabilities. Hearings before a deputy commissioner were held. The deputy commissioner found that Old Republic had acted in bad faith in delaying disability payments. He awarded Bird extensive benefits and imposed *1079 stringent penalties on all overdue benefits, costs and attorneys' fees, in accord with the Workers' Compensation Act's provisions. After unsuccessfully appealing these awards, Old Republic paid all damages and penalties due to Bird.
Thereafter, Bird filed the present Circuit Court action. Old Republic moved to dismiss the action on the ground that the Circuit Court had no jurisdiction to resolve this compensation dispute. When Old Republic's motion to dismiss was denied and its affirmative defense (asserting that the Circuit Court had no jurisdiction and the claim was barred by Section 440.11, Florida Statutes (1981))[1] was stricken, it filed its petition for writ of prohibition with this court.[2]
It is well established that because the Workers' Compensation Act provides a comprehensive, exclusive and adequate administrative remedy for employees' work-related claims, the circuit court is without jurisdiction over an employee's action for additional damages for injuries covered by the Act. Winn-Lovett Tampa, Inc. v. Murphree, 73 So.2d 287 (Fla. 1954). Likewise, because the exclusivity and immunity provisions of the Act, § 440.11, Fla. Stat. (1981), apply to the compensation carrier as well as the employer, Sullivan v. Liberty Mutual Insurance Co., 367 So.2d 658 (Fla. 4th DCA 1979), cert. denied, 378 So.2d 350 (1979); Carroll v. Zurich Insurance Co., 286 So.2d 21 (Fla. 1st DCA 1973), dismissed, 297 So.2d 568 (Fla. 1974), a circuit court is without jurisdiction over an action against the carrier for injuries covered by the Act. Our inquiry therefore turns to whether the injury for which Bird sought compensation in his Circuit Court action is an injury covered by the Act.
The injury for which Bird sought recovery in the Circuit Court was Old Republic's alleged bad faith refusal to timely compensate him for his disabilities, an injury which is compensable under the Act, and one for which the deputy commissioner in fact imposed punitive costs and attorneys' fees in the compensation proceedings. Plainly, then, the injury is covered by the Act, and a compensation claimant cannot avoid the exclusivity of the Act and transform a delay in payments into an actionable tort cognizable in the Circuit Court simply by calling that delay outrageous, fraudulent, deceitful, or an intentional infliction of emotional distress. See, e.g., Sullivan v. Liberty Mutual Insurance Co., 367 So.2d 658 (Fla. 4th DCA 1979).
In Sullivan, a worker brought an action in the circuit court against his employer's compensation carrier for wrongful termination of medical treatment and intentional injury by willful withdrawal of authorization for treatment. He alleged that the result of the insurer's intentional withdrawal of authorization was that he suffered an amputation of his foot and other injuries. The trial court dismissed the case. The Fourth District affirmed. Sullivan's exacerbated injuries, like Bird's, were incidental to his original injury and compensable by his employer's compensation carrier.[3] The court held that the relief provided under the Act "is his sole remedy against the ... carrier." 367 So.2d at 660.
The Sullivan court reasoned that if delay in providing services could become the subject of an independent suit, the legislatively designed exclusivity of the Act would be destroyed.
"[B]eyond the legalistic objection to appellant's position [i.e., that the Act provided his sole remedy], we must point out that if delay ... attributable to a carrier *1080 could give rise to independent third party court actions, the system of workmen's compensation could be subjected to a process of partial disintegration. In the practical operation of the plan, minor delays in getting medical service, such as for a few days or even a few hours, caused by a carrier, could become the bases of independent suits, and these could be many and manifold indeed. The uniform and exclusive application of the law would become honeycombed with independent and conflicting rulings of the courts. The objective of the Legislature and the whole pattern of workmen's compensation could thereby be partially nullified.
... .
"Flagrant interference by a carrier with rendition of medical care ... should generate swift relief in the commission. The courts support the commission in affording it."
367 So.2d at 660-61, quoting Noe v. Travelers Insurance Co., 172 Cal. App.2d 731, 342 P.2d 976 (1959) (claimant's exclusive remedy for insurer's wanton misconduct is under workers' compensation law; no remedy by separate action against insurer) (emphasis supplied).
Other jurisdictions agree. Everfield v. State Compensation Insurance Fund, 115 Cal. App.3d 15, 171 Cal. Rptr. 164 (1981) (allegations that compensation carrier consistently delayed payments, arbitrarily reduced amount paid, and intentionally disregarded subpoena duces tecum resulting in physical and emotional suffering and that these acts were intentional, deceitful, fraudulent, and in bad faith insufficient to warrant departure from basic rule that worker's sole remedy lay in compensation proceedings under Act); Sandoval v. Salt River Project Agricultural Improvement & Power District, 117 Ariz. 209, 571 P.2d 706 (Ct.App. 1977) (regardless of intentional or negligent manner in which insurer failed to provide worker with benefit due, compensation law provides exclusive remedy for alleged tort where essence of claim is deprivation of benefits). See generally United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966) (Federal Tort Claims Act); Gill v. United States, 641 F.2d 195 (5th Cir.1981) (same); 2A Larson, Workmen's Compensation Law § 65 (Supp. July 1983).
The recent revisions to the Workers' Compensation Act, applicable to Bird's claim, highlight the Act's all-encompassing nature. The primary purpose of these revisions was to make the Act self-executing and to give the Division of Workers' Compensation additional authority to punish recalcitrant insurers and employers. Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). In McDonald, the court held that the Act was broad enough to provide the Workers' Compensation Division with sufficient authority to punish a carrier for willful and intentional "bad faith" as well as negligent abuse of duty without going outside the parameters of workers' compensation law.
"Since the relationship of the parties  employer, employee, and carrier  is unique in workers' compensation matters, being solely the creature of statute, we conclude that the bad faith language as used and defined in the statute must be given its own unique application... . consistent with the history and objectives of the workers' compensation law....
... .
"The legislative intent was and is that the workers' compensation law should be self-executing... .
"[T]he obligations of the carrier to the claimant are not dependent upon the contract of insurance. They are mandated by the workers' compensation act itself. The act itself makes it clear that the obligations and duties of the employer and carrier are regarded as inseparable to the extent necessary to carry out the purpose of the law."
395 So.2d at 209.
Bird's complaint seeks to evade the exclusivity of the workers' compensation law by pleading a cause of action for intentional harm. The complaint, however, as the complaint in Sullivan, does no more than *1081 allege intentional nonperformance of a statutory duty imposed by the Act. As the Sullivan court stated in affirming the dismissal of the complaint:
"Sullivan also contends that he sufficiently alleged a cause of action against the insurer for intentionally harming him. Section 440.11(2) provides exceptions to the immunity granted in the case of certain willful assaults [physical aggression] and automobile accidents. It would appear that the immunity granted under the statute was not intended to cover instances where a carrier intentionally harms the employee. However, while it is alleged that the insurer intentionally withdrew its authorization for medical treatment, nowhere is it alleged that Liberty Mutual intentionally injured Sullivan. We agree with the trial judge that the allegations were insufficient to come within any exception to the statutory immunity." 367 So.2d at 661.
In Everfield v. State Compensation Insurance Fund, 171 Cal. Rptr. 164, the California court decided a case virtually identical to the case before us. There, a worker who had received disability payments for his injuries filed a two-count action. In Count I, he alleged consistent delay in compensation payments, arbitrary reductions in amounts paid, and intentional disregard of a subpoena duces tecum, resulting in physical and emotional suffering. In Count II, he added that these acts were intentional, fraudulent, and in bad faith with intent to injure plaintiff. The court ruled that the plaintiff had no cause of action cognizable in the court, as the remedies provided under the workers' compensation law were both exclusive and sufficient.
"[P]laintiff has described three things: delay, the change in the amounts paid and disobedience to the subpoena... . These three acts in themselves are not fraudulent, deceitful, outrageous, perfidious or so extreme or abnormal as to fit in the class of misconduct [entitling a worker to bring a third party tort action]... . The addition of these words ["fraudulent, deceitful and intentional"] does not describe the conduct but simply asserts the subjective characterization of them by plaintiff-appellant.
"If every case in which there is a delay, a change of amount ... could be brought into a court by an unhappy worker by merely alleging that the acts were intentional, deceptive, outrageous and fraudulent without alleging the specific conduct and how it was carried out ... it would make shambles of the Worker's Compensation system... .
"The reasons for the delay, whether intentional or negligent, whether excusable or not, can be well inquired into by the board and where necessary, discipline imposed.
... .
"[A]ppellant's complaint does no more than allege a nonperformance of a statutory duty to provide temporary disability benefits under the California Labor Code... .
"There are good reasons for leaving the matter of Workmen's Compensation payments in the exclusive control of the Workmen's Compensation Appeals Board.... [T]he present system ... provides a quick, simple and readily accessible method of claiming and receiving compensation." 171 Cal. Rptr. at 165-66.
Similarly, in Sandoval v. Salt River Project Agricultural Improvement & Power District, 571 P.2d 706, a worker sought relief in the courts for wrongful denial of benefits in processing his workers' compensation claim. He described the defendant's conduct as "intentional wrongful suspension of compensation benefits" causing "undue hardship and great mental suffering and emotional distress." 571 P.2d at 710. He claimed "injurious falsehood, intentional breach of fiduciary duties, false representations, negligence, recklessness, wilful and wanton and outrageous conduct, and intentional infliction of mental suffering." The Arizona court wrote:
"[I]t is obvious ... that all of the claims are based entirely upon the assertion that [defendants] either intentionally or negligently failed to provide [claimant] *1082 with benefits he was or may be entitled to under the Workmen's Compensation laws.
"[T]he trial court correctly concluded that claims of this nature lie within the exclusive jurisdiction of the Industrial Commission. The Arizona Workmen's Compensation Act establishes a comprehensive system for the adjudication of all controversies arising out of the processing of the injured workman's claim for benefits ... and the jurisdiction of the Industrial Commission is exclusive in that regard.
... .
"We hold that regardless of the intentional or negligent manner in which a decision is made, the Workmen's Compensation law provides the exclusive remedy for review of any administrative decision made by a carrier ... in which the basic contention of the claimant is that he has been wrongfully deprived of benefits due under the Workmen's Compensation laws... . [W]here the essence of the claim is the alleged wrongful deprivation of benefits, the Industrial Commission has the exclusive jurisdiction to adjudicate that controversy." 571 P.2d at 710-12 (citations omitted).
Accord, Young v. United States Fidelity & Guaranty Co., 588 S.W.2d 46 (Mo. App. 1979).
We conclude, therefore, that jurisdiction over Bird's "bad faith" claims rests exclusively in the Division of Workers' Compensation, which has already asserted that jurisdiction and assessed appropriate penalties against Old Republic. In reaching this conclusion, we have not overlooked Salkay v. Deuschle, 385 So.2d 181 (Fla. 4th DCA 1980), or Reed v. Hartford Accident and Indemnity Co., 367 F. Supp. 134 (E.D.Pa. 1973), heavily relied on by Bird.
In Salkay, an injured workman received a compensation award which determined that his corporate employer owed him benefits. The corporation was not insured. It was not properly qualified as a self-insurer. Salkay did not receive the benefits awarded. The corporation was subsequently liquidated. Salkay sued the individuals who were trustees of the dissolved corporation. He alleged in his complaint that these individuals, in their capacities as trustees, liquidated the corporation, and thereafter, in their individual capacities, converted and concealed the assets in a fraudulent attempt to deprive him of the benefits he had been awarded. The only issues tried or triable in the workers' compensation proceeding had been Salkay's status as an employee, the amount of his entitlement, the identity of his employer, and the methods of enforcing his award. The Fourth District held that Salkay was entitled to sue in circuit court because the suit was based on "injuries not encompassed within the expressed provisions or intendments of the Act." 385 So.2d at 182. Salkay therefore stands for the unremarkable proposition, clearly inapposite to the case at hand, that a suit involving issues not encompassed within the provisions of the Workers' Compensation Act against parties not insured or properly qualified as self-insurers under the statute was not barred by res judicata or estoppel by judgment arising from a prior determination in workers' compensation proceedings that the employer owed the claimant benefits.[4]
In Reed v. Hartford Accident and Indemnity Co., 367 F. Supp. 134, the district court, finding nothing in the controlling state law of Pennsylvania which would prevent the bringing of the lawsuit, denied the carrier's motion to dismiss a complaint which alleged that the carrier had wrongfully terminated workers' compensation benefits. Reed is readily distinguishable. The Pennsylvania workers' compensation law applicable at the time Reed made his claim for compensation benefits and brought his federal action substantially differs *1083 from the Florida Workers' Compensation Act applicable here. The Pennsylvania Workers' Compensation Act provided no mechanism to enforce the prompt payment of legitimate claims.[5],[6] Florida's compensation law, in contrast, contains mechanisms to insure timely payment and provides an array of sanctions which may be imposed when a carrier wrongfully withholds payment. Because the availability of these sanctions gives to Bird an adequate remedy under the Act, the remedy under the Act is exclusive.
Accordingly, we conclude that the Circuit Court does not have jurisdiction over Bird's action, and the petition for writ of prohibition is granted. We are confident that it is unnecessary for us to issue the writ, and we therefore remand the cause to the Circuit Court with directions to dismiss the complaint.
NOTES
[1] Section 440.11, Florida Statutes (1981), provides, in essence, that the liability of an employer which, as here, has brought itself within the provisions of the Workers' Compensation Act "shall be exclusive and in place of all other liability of such employer ... to the employee."
[2] Prohibition is the proper remedy to prevent a court from acting without jurisdiction. English v. McCrary, 348 So.2d 293 (Fla. 1977); Department of Natural Resources v. Circuit Court of the Twelfth Judicial Circuit, 317 So.2d 772 (Fla. 2d DCA 1975), aff'd, 339 So.2d 1113 (Fla. 1976).
[3] Indeed, the court noted that the carrier remained liable for any medical services required and that liability could be enforced through an industrial claims judge. 367 So.2d at 659 n. 1.
[4] Moreover, the Fourth District, which decided Sullivan in 1979, stated in Salkay in 1980: "We have not found a Florida case precisely on point." 385 So.2d at 182. If the facts had been similar to those in this case, Sullivan obviously would have controlled.
[5] That Reed was either somehow distinguishable or, if not distinguishable, wrong, was recognized by the Arizona court in Sandoval v. Salt River Project Agricultural Improvement & Power District, 571 P.2d at 712:

"We have found it difficult to assess the persuasive value of these decisions because of the lack of detail which would afford the basis for a comprehensive comparison of the compensation laws of those jurisdictions with the statutory scheme existing in Arizona. Suffice it to say that to the extent that any of these decisions suggest a result different from that set forth in this opinion, we reject it as contrary to the basic philosophy evidenced by Arizona statutory and decisional Workmen's Compensation law."
[6] Post-Reed, the Pennsylvania Legislature remedied this deficiency by amending its statute to provide for the assessment of interest and penalties when claims were not promptly paid. See, e.g., 77 Pa. Stat. Ann. §§ 717.1, 774.1 (Purdon) (1972). The preamble to the amendments stated:

"[T]he act fails to equip the department with essential powers and mechanisms to require observance of reasonable time standards in processing and payment operations, and totally omits any provision for the department to hear and determine ... the entitlement of employees or their dependents where entitlement is contested, or as more frequently occurs, where compensation is withheld for unexplained reasons.
"Accordingly, the General Assembly declares that the purpose of [these] amendments ... is to correct these procedural deficiencies and assure the full payment of compensation when due." 1972 Pa. Laws 25, No. 12 (Feb. 8, 1972).