997 So.2d 1089 (2008)
Betty Anna SANDERS, Petitioner,
v.
CITY OF ORLANDO, et al., Respondents.
No. SC06-847.
Supreme Court of Florida.
September 25, 2008.
As Revised on Denial of Rehearing December 18, 2008.
*1091 Todd Sanders and Geoffrey Bichler of Bichler and Kelley, P.A., Winter Park, FL, for Petitioner.
Barbara A. Eagan and Michael Broussard of Broussard, Cullen, DeGailler and Eagan, P.A., Orlando, FL, for Respondents.
Mark L. Zientz and Andrea Cox of Mark L. Zientz, P.A., Miami, FL, on behalf of Florida Workers' Advocates; and Richard A. Sicking, Coral Gables, Florida, on behalf of Florida Professional Firefighters, Inc., International Association of Firefighters, AFL-CIO, as Amici Curiae.
LEWIS, J.
We have for review Flamily v. City of Orlando, 924 So.2d 78 (Fla. 1st DCA 2006),[1] which is in express and direct conflict with multiple decisions of all the district courts of appeal including Liberty Mutual Insurance Co. v. Steadman, 895 So.2d 434 (Fla. 2d DCA 2005); Southeast Administrators, Inc. v. Moriarty, 571 So.2d 589 (Fla. 4th DCA 1990); and Covert v. Hall, 467 So.2d 372 (Fla. 2d DCA 1985). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. We quash the decision under review for the reasons provided in our analysis.

I. FACTUAL AND PROCEDURAL HISTORY
This review arises from the decision of the First District Court of Appeal in Flamily, in which the court reviewed a workers' compensation case. During the proceedings, a Judge of Compensation Claims ("JCC") vacated a 1996 compensation settlement agreement. Flamily was an employee of the City of Orlando ("the City") and permanently retired from that employment on January 16, 1996, due to a heart condition. Flamily submitted a workers' compensation claim for the heart condition and was represented by Herbert Hill. In approximately February 1996, Hill made two requests to the City to produce documents. In response, Hill received a medical summary, which stated that the blood test results for the years 1978 through 1982, during Flamily's employment, were within a normal range. The City accepted Flamily as permanently totally disabled on September 24, 1996.
On December 11, 1996, Hill's office received a fax from cardiologist Dr. Kakkar, which stated that Flamily had attained maximum medical improvement on July 22, 1996. Before receipt of this fax, both Flamily and his attorney, Hill, had signed all of the paperwork to effectuate the settlement of the workers' compensation claim based on the heart condition. The settlement paperwork was then submitted to the City's attorney, James Condry, on December 12, 1996. On December 14, 1996, a JCC approved the settlement, which allegedly contained different terms than the settlement paperwork that Hill and Flamily had previously signed. For *1092 example, the settlement paperwork had previously contained a $3,000 per visit limit for future medical expenses, but at the time the settlement was approved, the terms provided a $3,000 per lifetime limitation. The settlement approved by the JCC also contained language that Flamily waived any future workers' compensation claims that were either known or unknown at the time of the settlement.
During Flamily's twenty-three-year career with the City, he had twenty-four physical examinations performed by the City, one each year and a preemployment physical, during which blood tests were performed. None of these examinations disclosed any significant health problems. A 1978 blood test first disclosed elevated levels of liver enzymes. In approximately 1979, the City began requiring firefighters to use gloves and masks while performing their duties. Blood tests performed in later years, 1988 and 1990, also reflected abnormal liver functions. Although Flamily signed a memo in which he indicated that he had received the results of the 1978 blood test, he asserted that he was never advised of any abnormal blood-test results; thus, he did not seek a follow-up evaluation or treatment based upon any of the blood-test results.
Flamily claimed that during his career he had multiple incidents of patients vomiting in his mouth, having his body covered in blood, and receiving accidental needle-puncture wounds. Despite the City policy that an employee was required to immediately file a report after a potential exposure, Flamily never filed a report with regard to these alleged incidents. Moreover, Flamily could not specifically recall a needle-puncture wound which involved a patient that he knew suffered from hepatitis C, which is caused by the hepatitis C virus ("HCV"). Flamily was tested for HIV on February 12, 1992, after coming into contact with fecal matter from an AIDS patient, with the test producing a negative result. The City only began administering tests to firefighters for HCV in 2000. In April 2000, Dr. M. Siraj Islam ordered a liver biopsy for Flamily after a referral from Dr. Sunil Kakkar due to elevated liver enzymes. The liver biopsy suggested liver cirrhosis at a serious stage-four level. In November 2000, Flamily was diagnosed with HCV. On January 11, 2001, Flamily notified the City of his HCV condition and then submitted a workers' compensation claim for his HCV condition.
After a final hearing before a JCC on March 18 and 19, 2004, Flamily's petition for benefits for his HCV condition was denied. During these proceedings, the City asserted that Flamily engaged in multiple activities prior to his employment with the City that could have exposed him to HCV. In a psychological report, Flamily stated that he had used cocaine, opium, marijuana, and LSD while in Vietnam, but he later denied ever using illegal drugs. The JCC found that Flamily's HCV condition was not presumptively suffered in the line of duty under section 112.181 of the Florida Statutes and also that his HCV was not an occupational disease. See Flamily, 924 So.2d at 79. The JCC vacated the 1996 settlement agreement based on Flamily's heart condition because it contained material misinformation upon which Flamily had relied when he agreed to the settlement. See id.
On appeal, the First District held, in part, that the JCC lacked subject matter jurisdiction to vacate the 1996 settlement agreement. See id. The First District reasoned that Marchenko v. Sunshine Companies, 894 So.2d 311 (Fla. 1st DCA 2005), established that a "JCC no longer has jurisdiction to vacate settlement agreements pursuant to the statutory changes *1093 made in 2001 to section 440.20(11)(c)." Flamily, 924 So.2d at 80.[2] The First District further reasoned that this statutory change was a procedural change, which permitted retroactive application to Flamily's 1996 settlement agreement. See id. This review followed.

II. ANALYSIS

A. Introduction
The City asserts that the 2001 amendment that added subsection (c) to section 440.20(11) divested the JCCs of the authority to vacate or set aside lump-sum settlement agreements entered into by claimants who are represented by counsel. As a preliminary matter, the issue under review is a pure question of law that is subject to de novo review. See Borden v. East-European Ins. Co., 921 So.2d 587, 591 (Fla.2006) (holding that the issue under review was "a question of statutory interpretation and thus was subject to de novo review" (emphasis supplied)).

B. Historical Background
To address this issue, we must first look to the historical context of the relationship between JCCs and Article V courts with regard to workers' compensation matters. All Article V courts that have been presented with the issue of subject matter jurisdiction to adjudicate disputes involving workers' compensation matters have uniformly held in very broad, general, and generic terms that Article V courts have no subject matter jurisdiction to adjudicate disputes involving workers' compensation issues. All Article V courts have placed exclusive subject matter jurisdiction for such disputes within the workers' compensation proceedings. These cases present a vast variety of disputed matters touching upon issues within the workers' compensation context and uniformly reject subject matter jurisdiction of worker compensation disputes. See, e.g., Steadman, 895 So.2d at 435 ("A circuit court has no jurisdiction over an action against a compensation carrier for injuries covered by the [Workers' Compensation] Act." (citing Moriarty, 571 So.2d 589)); Protegrity Servs., Inc. v. Brehm, 901 So.2d 150, 153 (Fla. 5th DCA 2005) (substantially the same); Moriarty, 571 So.2d at 590 (substantially the same) (citing Old Republic Ins. Co. v. Whitworth, 442 So.2d 1078 (Fla. 3d DCA 1983)); Covert, 467 So.2d at 374 (substantially the same); Whitworth, 442 So.2d at 1079 (substantially the same). Instead, the uniform approach has historically been that JCCs have exclusive subject matter jurisdiction over disputed workers' compensation claim matters.
Additionally, prior to the 2001 statutory amendment, courts (including this Court) have consistently interpreted the Workers' Compensation Act to empower the JCCs to vacate or set aside settlement agreements. See, e.g., Steele v. A.D.H. Bldg. Contractors, Inc., 174 So.2d 16, 19 (Fla. 1965) (discussing the power of a JCC, formerly known as a "deputy commissioner," to set aside settlement agreements for various *1094 reasons); Quintana v. S. Precast, Inc., 634 So.2d 688, 689 (Fla. 1st DCA 1994) (substantially the same). In fact, multiple decisions have even concluded that the failure of a JCC to set aside a settlement agreement under certain circumstances constitutes error. See, e.g., Gilliland v. Wood `N You, 626 So.2d 309, 310 (Fla. 1st DCA 1993) (reversing the decision of the JCC to deny setting aside an earlier order that approved a lump-sum settlement agreement); East v. Pensacola Tractor & Equip. Co., 384 So.2d 156, 157 (Fla. 1st DCA 1980) (reversing the decision of the JCC to deny setting aside a settlement agreement). These judicial interpretations are consistent with the express terms of chapter 440, Florida Statutes (2001), which constitutes the Workers' Compensation Act. For example, section 440.33(1) has the following language:
The judge of compensation claims may... do all things comformable to law which may be necessary to enable the judge effectively to discharge the duties of his or her office.
§ 440.33(1), Fla. Stat. (2001) (emphasis supplied). Thus, we conclude that the JCCs clearly had jurisdiction to vacate or set aside compensation settlement agreements prior to the 2001 legislation.
In 2001, the Legislature added subsection (c) to section 440.20(11), which is quoted above. Subsequently, in Flamily, the First District concluded that this amendment to section 440.20(11) rescinded and nullified the subject matter jurisdiction of JCCs to set aside settlement agreements of workers' compensation claims. See Flamily, 924 So.2d at 80. Thus, according to the First District, only an Article V court would be available to provide a remedy. However, in Flamily, the potential liability of the City and the operation of the settlement document does not fall under one of the explicit exceptions to the exclusiveness of the Workers' Compensation Act:
(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer ... except as follows:
(a) If an employer fails to secure payment of compensation as required by this chapter....
(b) When an employer commits an intentional tort that causes the injury or death of the employee.
§ 440.11(1)(a)-(b), Fla. Stat. (2001) (emphasis supplied). Additionally, the 2001 amendment that added section 440.20(11)(c) did not create an additional exception of any type. We conclude that if the Legislature had intended for section 440.20(11)(c) to constitute an explicit exception, it would have been explicit and most probably included under section 440.11, with the other exceptions. Thus, the First District's conclusion in the decision below that JCCs do not have jurisdiction to set aside settlement agreements of workers' compensation claims expressly and directly conflicts with well-established precedent that JCCs have exclusive jurisdiction over workers' compensation matters.

C. Effect of 2001 Amendment That Added Subsection (c) to Section 440.20(11)
To analyze the 2001 amendment that added subsection (c) to section 440.20(11), we must first look to the plain language of the statute. See Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) ("[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.") (emphasis supplied) (quoting A.R. Douglass, Inc., v. *1095 McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)); State v. Egan, 287 So.2d 1, 4 (Fla.1973) ("Where the legislative intent as evidenced by a statute is plain and unambiguous, then there is no necessity for any construction or interpretation of the statute, and the courts need only give effect to the plain meaning of its terms.") (emphasis supplied) (citing Alligood v. Fla. Real Estate Comm'n, 156 So.2d 705 (Fla. 2d DCA 1963)).
We conclude that the plain language and legislative intent of the 2001 amendment establishes that JCC approval may no longer be required for the non-attorney fee portion of a represented claimant's compensation settlement agreement. This provision does not in any way address whether a JCC retains jurisdiction to vacate or set aside a settlement agreement of a represented workers' compensation claimant. We disagree with the City's assertion that a JCC has ever lost this authority, which was the conclusion of the First District in the decision below, and would be completely contrary to the uniform holdings of all other district courts with regard to jurisdiction. In the amendment that added section 440.20(11)(c), the following language is critical: "The settlement agreement requires approval by the judge of compensation claims only as to the attorney's fees paid to the claimant's attorney by the claimant." § 440.20(11)(c), Fla. Stat.2001 (emphasis supplied). First, as Flamily correctly asserts, this language does not address or preclude parties from requesting approval by the JCC of a lump-sum settlement agreement, even though approval is not required. Additionally, the legislation only references "approval." There is absolutely no mention of jurisdiction or the concept of set aside or vacation within section 440.20(11)(c). Rather than divesting a JCC of the power to vacate or set aside settlement agreements, we conclude that the clear language and purpose of this 2001 legislation was to create a distinction between represented and unrepresented parties as to whether JCC approval was required for their workers' compensation settlement agreements under various circumstances. This is supported by the other changes instituted by the 2001 legislation. Along with the addition of section 440.20(11)(c), the legislation added "[w]hen a claimant is not represented by counsel" to the beginning of section 440.20(11)(b). (Emphasis supplied.) This lone addition to section 440.20(11)(b) modified this entire subsection, making representation by counsel a salient factor. Moreover, all of the following language was stricken from section 440.20(11)(b):
When the claimant is represented by counsel or when the claimant and carrier or employer are represented by counsel, final approval of the lump-sum settlement agreement ... shall be approved by entry of an order....
Ch.2001-91, § 17, at 779, Laws of Fla. (emphasis supplied). This deletion is consistent with Flamily's contention that the "requires" language of section 440.20(11)(c) does not prevent a JCC from either approving or vacating a settlement agreement of a represented claimant when the parties so request. The word "shall" is mandatory in nature. See Fla. Bar v. Trazenfeld, 833 So.2d 734, 738 (Fla.2002) ("The word `may' when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the word `shall.'"). Here, the Legislature deleted the language that mandated approval under section 440.20(11)(b) to correlate with the language in section 440.20(11)(c) that made approval permissive upon the request of the parties. Moreover, the same 2001 amendment added section 440.20(11)(d), which includes the following language:

*1096 With respect to any lump-sum settlement under this subsection, a judge of compensation claims must consider at the time of the settlement, whether the settlement allocation provides for the appropriate recovery of child support arrearages.
§ 440.20(11)(d), Fla. Stat. (2001) (emphasis supplied). This language is consistent with a JCC retaining jurisdiction to review settlement agreements, even though it may no longer be required to approve them.[3] In conclusion, the plain language of section 440.20(11), in its entirety, illustrates that the legislative intent for adding subsection (c) was to eliminate the requirement that a JCC approve the non-attorney fee portion of a lump-sum settlement agreement for a represented claimant.
With the greater likelihood that a represented claimant will not be the victim of fraud or misrepresentation during the claims process, the elimination of the requirement of JCC approval for non-attorney fee portions of a lump-sum settlement agreement is efficient because the paperwork and delay that may result from JCC approval is often unnecessary for a well-represented claimant. The following language of section 440.20(11)(c) illustrates the increased efficiency under the amendment: "The parties need not submit any information or documentation in support of the settlement, except as needed to justify the amount of the attorney's fees." § 440.20(11)(c), Fla. Stat. (2001). The plain language of section 440.20(11)(c) fully implements the legislative intent of increased efficiency, while allowing JCCs to retain the power to protect represented claimants.
Thus, although a JCC is not required to approve the non-attorney fee portion of a represented claimant's settlement agreement, jurisdiction is still vested in a JCC to set aside or vacate the settlement agreement based upon matters that may be discovered after execution of the settlement agreement. Moreover, our interpretation is consistent with the exception for attorneys fees that is provided under section 440.20(11)(c). As described above, section 440.20(11)(c) does not eliminate the requirement that attorney-fee portions of represented claimants' lump-sum settlement agreements be approved by a JCC.[4]

III. CONCLUSION
For the foregoing reasons, we quash the decision under review and remand for proceedings *1097 consistent with this opinion. In so doing, we approve the decisions in Steadman, Moriarty, Covert, and any other decisions that stand for the same proposition.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
CANTERO, Senior Justice, dissents with an opinion, in which BELL, J., concurs.
CANTERO, Senior Justice, dissenting.
I disagree with the majority that the decision below, Flamily v. City of Orlando, 924 So.2d 78 (Fla. 1st DCA 2006), directly conflicts with multiple district court decisions including Liberty Mutual Insurance Co. v. Steadman, 895 So.2d 434 (Fla. 2d DCA 2005); Southeast Administrators, Inc. v. Moriarty, 571 So.2d 589 (Fla. 4th DCA 1990); and Covert v. Hall, 467 So.2d 372 (Fla. 2d DCA 1985). These cases do not interpret the particular subsection of the statute at issue here. I would therefore discharge the petition for review as improvidently granted. See, e.g., Bateman v. State, 446 So.2d 97, 97 (Fla.1984) ("After reading the briefs on the merits and hearing oral argument, we conclude that the... decision before us does not expressly and directly conflict with [another district court decision].").
In Flamily, the First District held that the judge of compensation claims (JCC) did not have jurisdiction to set aside a 1996 worker's compensation settlement agreement. As the majority notes, before 2001 courts (including this Court) consistently interpreted the Worker's Compensation Act to vest the JCC with jurisdiction to set aside settlement agreements. Majority op. at 1093. In 2001, the Legislature amended section 440.20(11) to include the language presently found in subsection (c).[5] Since that amendment, the First District has consistently construed that subsection as divesting the JCCs of authority to approve, vacate, or set aside settlement agreements, except when a party is unrepresented by counsel. Compare Flamily, 924 So.2d at 78 (holding that due to the retroactive application of the amendment to section 440.20(11)(c) the JCC was without jurisdiction to set aside a 1996 settlement agreement); and Marchenko v. Sunshine Co., 894 So.2d 311 (Fla. 1st DCA 2005) (holding that since the 2001 amendment to section 440.20(11)(c) the JCC is without jurisdiction to approve or set aside settlement agreements); with Vallecillo v. Bachiller Ironworks, 982 So.2d 734 (Fla. 1st DCA 2008) (holding that where the claimant is unrepresented by counsel, section 440.20(11) does not apply, and therefore the JCC has jurisdiction to rescind a settlement agreement).
To date, the First District is the only district court of appeal to address the effect of section 440.20(11)(c). Therefore, its interpretation of that section cannot conflict with decisions of other district courts.
The cases the majority cites as conflicting are distinguishable. Those cases neither *1098 concern subject matter jurisdiction over settlement agreements nor rely on the statutory provision applied in Flamily.[6]See Steadman, 895 So.2d at 434 (holding that a claim of intentional infliction of emotional distress arising from delay in payment falls under the Workers' Compensation Act and therefore is outside the circuit court's jurisdiction); Moriarty, 571 So.2d at 590 (holding that the circuit court is without jurisdiction to entertain a failure to pay a worker's compensation claim because "the workers' compensation law provides the exclusive remedy for review of any administrative decision made by a carrier in which the basic contention of the claimant is that he has been wrongfully deprived of benefits due under the act"); Covert, 467 So.2d at 372 (holding that the trial court exceeded its authority in a rule nisi proceeding by allowing the appellee to collaterally attack the compensation order because the deputy commissioner has exclusive jurisdiction to hear and decide worker's compensation claims for personal injuries incurred in the course and scope of employment). Flamily and the alleged conflict cases can be read together to place subject matter jurisdiction over workers' compensation claims within the exclusive jurisdiction of the JCC, except as provided in section 440.20(11)(c).
Because I cannot agree that we have jurisdiction over this case, I respectfully dissent.
BELL, J., concurs.
NOTES
[1] On August 20, 2007, this Court granted the petitioner's Motion for Substitution of Party and substituted Betty Anna Sanders (the personal representative of the estate of Robert Flamily) because Flamily died on May 22, 2007. See Fla. R.App. P. 9.360(c)(3) ("If a party dies while a proceeding is pending and that party's rights survive, the court may order the substitution of the proper party on its own motion or that of any interested person.").
[2] This statutory revision added the following:

(c) Notwithstanding s. 440.21(2), when a claimant is represented by counsel, the claimant may waive all rights to any and all benefits under this chapter by entering into a settlement agreement releasing the employer and the carrier from liability for workers' compensation benefits in exchange for a lump-sum payment to the claimant. The settlement agreement requires approval by the judge of compensation claims only as to the attorney's fees paid to the claimant's attorney by the claimant. The parties need not submit any information or documentation in support of the settlement, except as needed to justify the amount of the attorney's fees.
§ 440.20(11)(c), Fla. Stat. (2001) (emphasis supplied).
[3] Contrary to the City's assertion, the staff analysis dated May 31, 2001, from the House of Representatives Committee on Insurance, is not dispositive with regard to the legislative intent behind section 440.20(11)(d), which is clear on its face. See H.R. Comm. on Ins., CS for HB 1803 (2201) Staff Analysis (final May 31, 2001).
[4] The City also contends that Flamily did not bring the action to set aside the settlement agreement within various limitations periods. Flamily contends that the City is estopped from denying the compensability of the HCV claim based on the failure to comply with its own policies (e.g., an exposure control plan), its collective bargaining agreement with its firefighters, and Flamily's discovery requests. We choose not to address these issues, but instead, remand for consideration. These issues were not addressed by the First District in the decision below.

Additionally, Flamily contends that the First District incorrectly concluded that the 2001 amendment, which added section 440.20(11)(c), applied retroactively. We also choose not to address this issue. As discussed above, the 2001 amendment did not divest the JCCs of jurisdiction to set aside or vacate settlement agreements. Thus, under our interpretation of section 440.20(11)(c), we grant relief for Flamily with regard to the 1996 settlement agreement without addressing whether the 2001 amendment should apply retroactively.
[5] Section 440.20(11)(c) reads:

(c) Notwithstanding s. 440.21(2), when a claimant is represented by counsel, the claimant may waive all rights to any and all benefits under this chapter by entering into a settlement agreement releasing the employer and the carrier from liability for workers' compensation benefits in exchange for a lump-sum payment to the claimant. The settlement agreement requires approval by the judge of compensation claims only as to the attorney's fees paid to the claimant's attorney by the claimant. The parties need not submit any information or documentation in support of the settlement, except as needed to justify the amount of the attorney's fees.
§ 440.20(11)(c), Fla. Stat. (2001).
[6] In fact, two of the alleged conflict cases were decided prior to the statutory change in 2001. See S.E. Adm'rs, Inc. v. Moriarty, 571 So.2d 589 (Fla. 4th DCA 1990); Covert v. Hall, 467 So.2d 372 (Fla. 2d DCA 1985).