968 So.2d 592 (2007)
LIBERTY MUTUAL INSURANCE COMPANY and Norma J. Peele, Appellants,
v.
Colleen M. STEADMAN, Appellee.
No. 2D04-1428.
District Court of Appeal of Florida, Second District.
August 29, 2007.
Rehearing Denied November 1, 2007.
*593 Steven L. Brannock and Sarah C. Pellenbarg of Holland and Knight LLP, Tampa, and Chris N. Kolos and Christopher Annunziato of Holland and Knight LLP, Orlando, for Appellants.
Matthew D. Valdes, P.A., Orlando, for Appellee.
KELLY, Judge.
This case is before us on remand from the Florida Supreme Court. In Liberty Mutual Insurance Co. v. Steadman, 895 So.2d 434 (Fla. 2d DCA 2005), this court reversed the trial court order denying Liberty Mutual and Norma Peele's motions to dismiss the complaint Colleen Steadman filed against them alleging a claim for intentional infliction of emotional distress. Liberty Mutual is the workers' compensation insurance carrier for Steadman's employer, and Peele is the Liberty Mutual employee who handled Steadman's claim for benefits. In our decision we cited Inservices, Inc. v. Aguilera, 837 So.2d 464 (Fla. 3d DCA 2002) (Aguilera I), which the supreme court subsequently quashed. See Aguilera v. Inservices, Inc., 905 So.2d 84 (Fla.2005) (Aguilera II). The supreme court quashed our decision without reaching the merits and remanded for reconsideration because we had cited, among other cases, Aguilera I. The supreme court directed this court to reconsider our decision in light of Aguilera II. See Steadman v. Liberty Mut. Ins. Co., 932 So.2d 1034 (Fla. 2006).
*594 At issue is whether Liberty Mutual and Peele are immune from suit by virtue of the workers' compensation immunity afforded in chapter 440, Florida Statutes (2002), the Workers' Compensation Act (the Act). In our prior opinion, we concluded that Steadman had not alleged any wrongdoing independent of the claims-handling process, and more specifically, that her claim was based entirely on Liberty Mutual's nine-month delay in authorizing lung transplant surgery that the Judge of Compensation Claims (JCC) had previously directed it to authorize. Because Steadman's claim did not fall within any exception to the statutory immunity afforded a carrier under the Act, we concluded that the trial court should have dismissed her complaint. See Liberty Mutual, 895 So.2d at 436.
In Aguilera II, the court recognized the continued viability of "cases holding that the mere delay of payments or simple bad faith in handling workers' compensation claims are not actionable torts, and that employees are not permitted to transform such simple delays into actionable torts cognizable in the circuit court." 905 So.2d at 91. The court reaffirmed the principle that "the workers' compensation legislation does immunize an insurance carrier for mere negligent conduct, simple bad faith, and minor delays in payment." Id. at 93. The court stressed, however, that the Act did "not afford blanket immunity for all conduct during the claim process, particularly the insurance carrier's intentional tortious conduct." Id. The court elaborated on what it viewed as the flaw in Aguilera I, stating that the court's focus should have been on the elements of the intentional tort alleged, not on whether the tort occurred in the context of the claims process:
The district court erred in utilizing the yardstick by which it measured the sufficiency of Aguilera's complaint with regard to whether his allegations stated a viable common law cause of action for an intentional tort against the insurance carrier. The Third District should not have limited itself to considering whether Aguilera's allegations involved wrongdoing totally separate and independent of the workers' compensation claim process itself. Pursuant to Sibley [v. Adjustco, Inc., 596 So.2d 1048 (Fla.1992) ], if an insurance carrier engages in outrageous actions and conduct that constitutes an intentional tortious act while processing the claim beyond mere short delays in payment and simple bad faith, the carrier is not cloaked with a shield of immunity flowing from the workers' compensation provisions.
Id. at 93-94 (citation omitted). Thus, we conclude that to determine whether the trial court correctly rejected Liberty Mutual and Peele's claims of immunity, our inquiry should be directed to whether Steadman's complaint states a cause of action for intentional infliction of emotional distress.
In Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277, 278 (Fla. 1985), the supreme court held that Florida recognizes the tort of intentional infliction of emotional distress as defined in section 46, Restatement (Second) of Torts (1965). To state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. Dependable Life Ins. Co. v. Harris, 510 So.2d 985, 986 (Fla. 5th DCA 1987). Behavior claimed to constitute the intentional infliction of emotional distress must be "`so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" Ponton v. Scarfone, 468 So.2d 1009, 1011 *595 (Fla. 2d DCA 1985) (quoting Metropolitan, 467 So.2d at 278). In applying that standard, the subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort of intentional infliction of emotional distress occurred. Id. Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is "`atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Metropolitan, 467 So.2d at 278). Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact. Gandy v. Trans World Computer Tech. Group, 787 So.2d 116, 119 (Fla. 2d DCA 2001); Ponton, 468 So.2d at 1011.[1]
Steadman's complaint lists an assortment of acts she contends were "intentional and outrageous," but the primary focus of her complaint is that Liberty Mutual and Peele delayed authorizing a double lung transplant even after the JCC had ordered Liberty Mutual to pay for it. Steadman alleges that Peele and Liberty Mutual's actions were "predicated on the fact that [Steadman] would die from her condition in a short time and the problem would go away" and that Peele and Liberty Mutual knew based on physician testimony that Steadman was not expected to survive until the following year. Steadman contends that based on that knowledge, Liberty Mutual intentionally denied and delayed payment for treatment in an effort to speed up her demise, to induce stress that it knew would be detrimental to her health, and to inflict emotional distress. Steadman alleges she suffered severe emotional distress and that the distress caused her physical condition to deteriorate.
The real issue in this case is not whether Steadman's complaint contains all the elements of a claim for intentional infliction of emotional distressit doesbut whether the "pleaded facts . . . ascend, or perhaps descend, to a level permitting us to say that the benchmarks enunciated in Metropolitan have been met." Ponton, 468 So.2d at 1011. In making that evaluation, we find comment "f" to section 46 of the Restatement (Second) of Torts instructive because it explains how knowledge of a person's particular susceptibility to emotional distress is relevant to determining whether the conduct is sufficiently extreme and outrageous to constitute intentional infliction of emotional distress:
f. The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, *596 or will have his feelings hurt, is not enough.
Viewed in isolation, the conduct Steadman has alleged with respect to the lung transplant is not so outrageous that it qualifies as "`atrocious, and utterly intolerable in a civilized community.'" See Metropolitan, 467 So.2d at 279 (quoting Restatement (Second) of Torts, § 46 cmt. d). However, paired with her specific allegation that Liberty Mutual and Peele knew, based on testimony from Steadman's physicians, that she had a very limited life expectancy, and further considering that Steadman was well aware that the clock was ticking and that the additional emotional distress caused by the delay could well hasten her demise, we conclude that the conduct falls within the ambit of comment "f" of section 46. Further, comment "e" explains that the unequal position of the parties in a relationship, where one asserts and has the power to affect the interests of the other, may also supply the heightened degree of outrageousness required for a claim of intentional infliction of emotional distress. See Restatement (Second) of Torts, § 46 cmt. e. Liberty Mutual was in such a position in relation to Steadman. Finally, accepting the allegations in the complaint as true, Liberty Mutual's delay was wholly unjustified because the issue of Steadman's entitlement to the lung transplant had been litigated, and the JCC had ordered Liberty Mutual to authorize the transplant. See Harris, 510 So.2d at 989 (holding that the insured sufficiently alleged a cause of action for intentional infliction of emotional distress where the insurer rejected the insured's claim for disability payments without any justification and where coverage had been previously determined to exist). Compare Metropolitan, 467 So.2d at 279 (holding that the insured failed to allege a cause of action for intentional infliction of emotional distress where the insurer asserted its "legal rights in a legally permissible way" by withholding benefits until the insured provided certain information in accordance with the policy).
Accordingly, we conclude that the conduct alleged in Steadman's complaint is "`so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency'" and thus meets the standard adopted in Metropolitan, 467 So.2d at 278-79 (quoting Restatement (Second) of Torts, § 46 cmt. d). We affirm the trial court's denial of Liberty Mutual and Peele's motion to dismiss Steadman's complaint, and we remand for further proceedings.
Affirmed.
CANADY and WALLACE, JJ., Concur.
NOTES
[1] Because we are reviewing an order on a motion to dismiss, our standard of review is, of course, de novo. Wishnatzki v. Coffman Const., Inc., 884 So.2d 282 (Fla. 2d DCA 2004). However, the question of whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress remains one of law for the court to determine in the first instance whether at summary judgment or at trial. See Baker v. Fla. Nat'l Bank, 559 So.2d 284, 287 (Fla.4th DCA 1990) (stating that the trial court acted properly in making a decision at the summary judgment stage regarding the adequacy of the facts to support claim for intentional infliction of emotional distress and noting that the decision can also be made on a motion for a directed verdict).