[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11537
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 30, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:09-cv-01652-JSM-MAP

LORENZO RUBIO,

Plaintiff-Appellant,

versus

HOWARD LOPEZ, individually and as Deputy, a
member of the Hillsborough County Sheriff's Office,
DAVID GEE, Hillsborough County Sheriff,
in his official capacity,

Defendants-Appellees,

KENNETH SCHAAF, individually and as Deputy, a
member of the Hillsborough County Sheriff's Office, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 30, 2011)

Before BARKETT, MARCUS and COX, Circuit Judges.

PER CURIAM:

Lorenzo Rubio ("Rubio") appeals the district court's grant of summary judgment to Hillsborough County Deputy Sheriff Howard Lopez ("Lopez") and Sheriff David Gee ("Gee"). Rubio sued Lopez in his individual capacity under 42 U.S.C. § 1983, alleging that Lopez violated the Fourth Amendment by subjecting him to excessive force. Rubio also asserted state-law claims of intentional infliction of emotional distress and battery against Lopez. Rubio sued Gee in his official capacity, alleging that Hillsborough County is liable for Lopez's battery.[1] The district court granted summary judgment in favor of Lopez and Gee on all claims. The court concluded that Lopez was entitled to qualified immunity for the § 1983 claim, and that the supplemental state law claims failed on the merits. We affirm.

We review a district court's grant of summary judgment de novo; and we view the evidence and all reasonable factual inferences in the light most favorable to Rubio, the nonmoving party. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007).

---

[1] Rubio sued several other officers, but he has voluntarily dismissed his claims against them prior to the entry of summary judgment in this case.

In July 2007, Rubio, wearing a bullet proof vest, arrived drunk at the law office of his girlfriend's attorney. According to Rubio, he was going to the office to find his firearm, which his girlfriend was holding, so that he could kill himself. Rubio was, in his own words, "out of his mind." When he arrived at the office, Rubio got into a physical altercation, and someone called the police. When the officer arrived, Rubio violently resisted arrest and attempted to reach for the officer's gun. The officer arrested Rubio without anyone getting hurt. Rubio does not challenge his arrest or the force used to effect it.[2] This excessive-force case concerns the force later used by Deputy Lopez.

Deputy Lopez arrived on the scene as Rubio was being escorted in handcuffs and shackles out of the office. Rubio was detained in the back seat of Lopez's police car. It was a hot July afternoon in Tampa, Florida, with temperatures exceeding 90 degrees Fahrenheit. According to Rubio, the air conditioner was off in the police car. While in the back seat of the car, Rubio complained to the deputies, standing outside the car, that he could not breathe, and he requested that they open the windows of the car. To get the deputies' attention, Rubio kicked the car window multiple times.

---

[2] Rubio pled guilty to the charges of battery on a law enforcement officer, resisting an officer with violence, and attempting to deprive an officer of means of protection.

3

Lopez, on at least two occasions, told Rubio to stop kicking. Rubio continued to kick.

To stop Rubio from kicking and breaking the window, Lopez decided that Rubio needed to be hobble-tied. To do so, Lopez took Rubio out of the car and forced him to the black asphalt pavement. While on the pavement, Rubio screamed that his skin was burning. The deputies continued to hobble-tie him on the pavement and, in the process, forced Rubio's chest and face against the pavement. The entire incident lasted about a minute.

After being booked into jail, Rubio was taken to Tampa General Hospital to address the injuries he sustained during the arrest. The hospital records show that Rubio suffered second degree burns to his face and chest.

A.    Fourth Amendment Claim Against Lopez

Rubio argues that the district court erred in granting qualified immunity to Lopez on his Fourth Amendment excessive-force claim. According to Rubio, there is a genuine issue of material fact as to whether he was incapacitated at the time Lopez pushed him against the hot pavement and whether Lopez announced that he was being burned by the pavement. When these facts are taken in his favor, Rubio

contends, the force used by Lopez was excessive and violated clearly established law.[3]

To defeat qualified immunity, Rubio must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citation omitted).[4] We can address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

In this case, we need not address the first inquiry because, even if we were to assume that Lopez's use of force violated the Constitution, Rubio cannot demonstrate that the law was so clearly established as to give Lopez fair warning that the force used under these circumstances would have violated the Fourth Amendment.

"A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious

---

[3] We agree with Rubio that, at this summary judgment stage, we must assume that he was incapacitated at the time Lopez pushed him against the pavement and assume Lopez said his skin was burning. But, as we explain, even under these facts, we cannot say that Lopez's use of force violated clearly established law.

[4] Rubio does not dispute that Lopez was acting within the scope of his discretionary authority at the time of the incident.

that a constitutional right was clearly violated, even in the total absence of case law."

*Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291-82 (11th Cir. 2009) (internal citations omitted).

Rubio first argues that *Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002) clearly establishes that Lopez's use of force was excessive. In *Skrtich*, an officer shocked and incapacitated a prisoner with an electronic shield after the prisoner refused to be handcuffed during a search of his cell. *Id.* at 1299. The officer then punched, kicked, and beat the prisoner so badly that he had to be airlifted from the prison to a hospital where he remained for nine days. *Id.* at 1299-1300. We held that the officer's conduct violated the Eighth Amendment. *Id.* at 1302. *Skrtich* is materially distinguishable from this case and does not clearly establish that Lopez's use of force was excessive. Unlike the use of force in *Skrtich*, where the officer's violent kicks and punches severely injured the plaintiff, the force in this case involves the rather novel combination of pushing the plaintiff's skin against the hot pavement during a tie-down procedure. It is undisputed that Lopez did not punch, kick, or beat Rubio. Because the use of force and the nature of the injury in this case are

fundamentally different than the force and injury in *Skrtich*, that case does not clearly establish that Lopez's use of force violated the Fourth Amendment.[5]

Rubio next argues that a broad principle in our case law clearly establishes that Lopez's use of force violates the Fourth Amendment. He cites a host of cases that stand for the general proposition that "government officials may not use gratuitous force against [an arrestee] who has been already subdued or . . . incapacitated." *Skrtich*, 280 F.3d at 1303.[6] "To find that a broad principle of law clearly establishes the law as to a specific set of facts, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Coffin v. Brandau*, 642 F.3d 999, 1014 -1015 (11th Cir. 2011) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) (internal quotation marks omitted)). Our case law has made clear that these types of "obvious clarity" cases will be rare. *Coffin*, 642 F.3d at 1015.

---

[5] Rubio also cites an unpublished case from the Western District of Missouri as clearly establishing his constitutional rights in this case. That will not do. Our Court looks only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation. *See Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1184 (11th Cir. 2009).

[6] He cites the following cases for the same proposition: *Harris v. Chapman*, 97 F.3d 499, 505-06 (11th Cir. 1996); *Davis v. Locke*, 936 F.2d 1208, 1212-13 (11th Cir. 1991); *Williams v. Cash-C.O.I.*, 836 F.2d 1318, 1320 (11th Cir. 1988); and *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

We conclude that not every reasonable officer in Lopez's position would have known that restraining Rubio on the hot pavement violates the Fourth Amendment. While it is clear that an officer cannot use gratuitous force against an incapacitated arrestee, that broad principle does not apply with obvious clarity in this case and does not clearly establish that Lopez's use of force was excessive. First, not every reasonable officer would have known that the pavement was so hot that it would burn someone's skin. While it is common knowledge that black pavement gets hot, especially during a Florida summer afternoon, it is not common knowledge that the pavement will be injuriously hot: the temperature of the pavement can vary based on many factors, such as surrounding shade, recent weather, or the composition of the surface. Second, even if every reasonable officer would have known that the pavement in this case was burning hot, it is not clearly established that the Fourth Amendment requires an officer to stop restraining a suicidal arrestee on the hot pavement when he complains of being burned and resume the restraint process on a cooler surface. If the Fourth Amendment imposes such a requirement, we can see how a reasonable officer would not know about it. We therefore conclude that no broad principle in our case law clearly establishes that Lopez's use of force violates the Fourth Amendment.

Rubio finally argues that, even though case law does not provide the necessary precedent, either specifically or through broad principles, to establish the constitutional violation, the violation was nonetheless clearly established because Lopez's use of force was egregious and blatant. We reject this argument. Even if the conduct at issue was unreasonable, it was not "so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (citation omitted). Because Rubio has failed to show that Lopez's force violated clearly established law, we conclude that Lopez is entitled to qualified immunity on Rubio's Fourth Amendment excessive-force claim.

B. Intentional Infliction of Emotional Distress Claim Against Lopez

Rubio argues that the district court erred in granting summary judgment to Lopez on his claim for intentional infliction of emotional distress. The court granted summary judgment on the ground that Rubio failed to produce sufficient evidence that Lopez intended to hurt Rubio by burning him on the pavement.

Under Florida law, the tort of intentional infliction of emotional distress ("IIED") requires the plaintiff to prove the following elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct, *i.e.*, behavior that goes beyond all possible bounds of decency and is regarded as atrocious and utterly

intolerable in a civilized community; (3) the conduct caused the emotional distress; and (4) the distress was severe. *See Liberty Mut. Insur. Co. v. Steadman*, 968 So. 2d 592, 594-95 (Fla. 2d DCA 2007).

We conclude that Lopez is entitled to summary judgment on the IIED claim. First, Rubio has failed to produce evidence that Lopez's conduct goes "beyond all possible bounds of decency" and is "atrocious, and utterly intolerable in a civilized community." *Id.* Second, Rubio has failed to produce evidence showing that Lopez's conduct caused severe emotional distress. To meet his burden on this element, Rubio has produced the expert testimony of a psychiatrist who testified that he "could not rule out the possibility" that the burning incident may have caused posttraumatic stress disorder, but the psychiatrist did not testify that Rubio has suffered severe emotional distress as a result of the burning incident. In fact, the psychiatrist testified that his treatment of Rubio did not involve the burning incident in any way. (Dkt. 45 at 16-17.) Because Rubio has failed to show that Lopez's conduct was outrageous and has failed to show that his conduct caused severe emotional distress, we affirm the district court's grant of summary judgment to Lopez on the IIED claim.

C. Battery Claim Against Lopez

Rubio argues that the district court erred in granting summary judgment to Lopez on his battery claim. The district court concluded that Rubio failed to produce evidence that Lopez intended to commit battery.

Under Florida law, the tort of battery requires the plaintiff to prove the following elements: (1) the intent to cause a harmful or offensive contact with another person; and (2) an offensive contact that directly or indirectly results. *Chorak v. Naughton*, 409 So. 2d 35, 39 (Fla. 2d DCA 1981). To establish the required intent to commit battery, the plaintiff must show that defendant exhibits a deliberate intent to injure or engages in conduct which is substantially certain to result in injury. *See D'Amario v. Ford Motor Co.*, 806 So. 2d 424, 438 (Fla. 2001) (citation omitted).

We conclude that Lopez is entitled to summary judgment on the battery claim. Rubio has failed to create a genuine issue of material fact regarding Lopez's intent. The evidence does not support the conclusion that Lopez forced Rubio to the pavement with the deliberate intent to injure or that Lopez's conduct was substantially certain to result in injury. Unlike the traditional battery case, the harmful or offensive contact was not caused by the defendant forcing the plaintiff to the ground. Instead, the injury was caused by Rubio's skin being exposed to the hot pavement. We cannot agree that Lopez's conduct–hobble-tying Rubio on the hot pavement to stop him from kicking a police car window–was substantially certain to

result in injury. Because Rubio has failed to create a genuine issue of material fact regarding Lopez's intent, we affirm the grant of summary judgment to Lopez on the battery claim.

D. Battery Claim Against Gee

Rubio argues that the district court erred in granting summary judgment to Sheriff Gee on the battery claim. Rubio sued Gee in his official capacity, alleging that Hillsborough County is liable for the battery committed by Lopez, a Hillsborough County employee. Having concluded that Lopez is entitled to summary judgment on the battery claim, there can be no liability on behalf of Hillsborough County. We therefore affirm the grant of summary judgment to Gee on the battery claim.

AFFIRMED.