[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11468

Non-Argument Calendar

_____

EDDY J. PHILIPPEAUX,

Plaintiff-Appellant,

*versus*

MIAMI APARTMENTS INVESTORS, LLC,
c/o United Corporate Services, Inc.
d.b.a. Monarc At Met3,
JOHN DOE,
Owner of Monarc At Met3,
BARON RESIDENTIAL MANAGEMENT,
JOHN DOE,
Owner of Baron Residential Management,
SHARON FOTHERGILL,
Agent for Owner of Monarc At Met3 and

Property Manager of Monarc At Met3,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cv-21275-BB

_____

Before ROSENBAUM, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

Eddy J. Philippeaux, proceeding *pro se*, appeals from the district court's dismissal of his Americans with Disabilities Act ("ADA") retaliation claim, dismissal of his intentional infliction of emotional distress ("IIED") claim under Florida law, and grant of summary judgment on his Fair Housing Act ("FHA") retaliation claim to Miami Apartments Investors, LLC, Sharon Fothergill, Baron Residential Management, and two "John Doe" defendants. Philippeaux brought this action after his apartment lease was not renewed. The district court held that Philippeaux failed to (1) plausibly allege that his apartment was a public accommodation under the ADA, (2) plausibly allege outrageous conduct necessary to plead an IIED claim, and (3) rebut the legitimate, nondiscriminatory reasons for the non-renewal of his lease. After careful review, we affirm.

## I.    Background

Philippeaux brought this action against Miami Apartments Investors, LLC, Baron Residential Management, Sharon Fothergill, and two pseudonymous "John Doe" defendants (collectively "defendants") in the United States District Court for the Southern District of Florida.  As relevant to this appeal, Philippeaux asserted claims for unlawful retaliatory eviction in violation of Title III of the ADA, 42 U.S.C. §§ 12181–12189, and the FHA, 42 U.S.C. §§ 3601 *et seq.*, and intentional infliction of emotional distress under Florida law.  Philippeaux's claims arise out of his residency at the Monarc at Met 3 apartment building ("the Monarc") and a prior lawsuit he filed against the defendants.

Philippeaux alleged that he is a disabled veteran who moved into the Monarc in May 2017.  Philippeaux's most recent Monarc lease provided him a lease term from September 27, 2021, to October 26, 2022.  At the end of the term, the lease would "automatically renew month-to-month unless either party gives at least 60 days' written notice of termination or intent to move-out." Further, defendants were required to "notify [Philippeaux] with written notice no later than 60 days before the end of the lease term if the lease [would] not be renewed."

Just before this lease took effect, in August 2021, Philippeaux sued defendants in a separate proceeding for alleged violations of the FHA and Title III of the ADA.  That complaint was ultimately dismissed as an impermissible shotgun pleading, and we affirmed on appeal.  *See Philippeaux v. Miami Apartments Invs., LLC*, No. 22-

11692, 2023 WL 2989831 (11th Cir. Apr. 18, 2023). While Philippeaux's appeal was pending, defendants notified Philippeaux that they would not renew his lease when it expired. Philippeaux alleges that the non-renewal of his lease constituted unlawful retaliation, and it is this action that forms the basis of the underlying complaint.

According to Philippeaux's amended complaint, Fothergill served as the Monarc's property manager during his residence. Philippeaux alleged that Fothergill "made Mr. Philippeaux's life hell" while she managed the Monarc by monitoring and restricting Philippeaux's presence in the Monarc's common areas.

In response to Philippeaux's complaint, Fothergill averred that she managed the Monarc from December 2019 through December 2022. Fothergill recalled several negative interactions with Philippeaux during that time. Fothergill described one incident in October 2021, in which Philippeaux approached the Monarc's leasing office after hours, and he "began banging on the glass" to get the managers' attention. Philippeaux's "banging became louder and more persistent." Fothergill told Philippeaux the leasing office was closed, and Philippeaux responded in a loud voice which made Fothergill "feel belittled." By contrast, when Fothergill's superior, a man, talked to Philippeaux, Philippeaux did not raise his voice. Accordingly, Fothergill "felt that . . . Philippeaux treated [her] in a misogynistic way." Around the same time, Fothergill received multiple complaints from other Monarc residents about Philippeaux's loitering in the Monarc lobby.

Fothergill "had a good faith belief" that those complaints were true. Accordingly, at Fothergill's request, defendants sent a letter in November 2021 to Philippeaux regarding his conduct ("the November letter").

The November letter explained to Philippeaux that he "approached Ms. Fothergill on numerous occasions in a harassing, argumentative, and aggressive manner, including physically banging on the glass walls of the leasing office." The letter instructed Philippeaux to "cease all communication with Ms. Fothergill and, instead, communicate only with" Fothergill's superior if Philippeaux needed anything. The letter also explained that defendants had "received complaints from several residents that [Philippeaux's] presence at the Concierge desk is disruptive and intrusive." Accordingly, the letter reminded Philippeaux that "loitering at and about the Concierge desk is prohibited." Finally, the letter also reminded Philippeaux that "visits to the management office are by appointment only."

Nonetheless, according to Fothergill's declaration, defendants continued to receive complaints about Philippeaux's presence in the Monarc lobby. For example, one resident complained that when "Philippeaux was loitering in the lobby on multiple occasions, he looked at [the resident's 15-year-old daughter] in a way that made [the resident] uncomfortable." Accordingly, defendants sent Philippeaux another letter in March 2022 ("the March letter").

The March letter informed Philippeaux that defendants "continued to receive complaints from several residents and our front desk staff concerning [Philippeaux's] prolonged presence and conduct at the Concierge." The letter reminded Philippeaux that his lease prohibited certain conduct, such as "behaving in a loud or obnoxious manner" or "disturbing or threatening the rights, comfort, health, safety, or convenience of others," including Monarc staff. The letter also reminded Philippeaux that he agreed in his lease "not to engage in any abusive behavior, either verbal or physical," towards other Monarc staff or residents. The letter reiterated that Philippeaux was "prohibited from loitering at the Concierge desk, interfering with staff, and interjecting [himself] into conversations between staff and other residents." The letter warned that it was "a final request" for Philippeaux to comply with his lease and that if Philippeaux continued to be disruptive, defendants would "seek termination of [Philippeaux's] lease."

On August 3, 2022, defendants notified Philippeaux that they would not renew his lease when it expired on October 26, 2022. Fothergill averred that defendants "chose not to renew [Philippeaux's] lease" because "of the multiple resident complaints and the way Mr. Philippeaux's behavior made [Fothergill] feel."

Philippeaux partially corroborated Fothergill's and other residents' complaints. Philippeaux testified in a deposition that there "may have [been] one or two persons who may have said something about, about [him] being in the lobby more frequently than they would like." Philippeaux denied "physically banging on

the glass walls of the leasing office," but he admitted that he would "knock on the glass door because that's the only way to actually get people's attention to come and answer the door" because the door was locked during the pandemic.

According to Philippeaux, when he moved out of the Monarc, Fothergill supervised the move and interacted with Philippeaux's movers. Thereafter, Philippeaux alleged that the moving company that he hired "terminate[d] [his] moving services without explanation" and held onto his belongings. According to Philippeaux, Fothergill had "interrogated" his movers by asking them "the name of the moving company and the location of their place of business." Philippeaux alleged that his "personal property and household goods" are "now the subject of theft in a separate court action" against the moving company. Accordingly, Philippeaux alleged, as relevant to this appeal, that defendants' non-renewal of his lease constituted retaliatory eviction in violation of the ADA and FHA and IIED under Florida law.

Defendants moved to dismiss in part[1] Philippeaux's amended complaint for failure to state a claim. As relevant to this appeal, the district court granted defendants' motion and dismissed Philippeaux's ADA and IIED claims.[2] The district court dismissed

---

[1] Defendants did not move to dismiss Philippeaux's FHA claim.

[2] Philippeaux's amended complaint also brought a claim under 42 U.S.C. §§ 1981 and 1985 and a claim for negligent infliction of emotional distress under Florida law. The district court dismissed these claims, and Philippeaux does not appeal their dismissal.

with prejudice Philippeaux's ADA claim because it had already determined in a prior order that Title III of the ADA did not apply to the Monarc, a private residential building.[3]  The district court also dismissed Philippeaux's IIED claim with prejudice because it did not view defendants' alleged conduct, "even if true, as so outrageous it was beyond the bounds of decency and utterly intolerable in a civilized community."    Accordingly, only Philippeaux's FHA claim survived.

After discovery, the parties filed cross-motions for summary judgment on Philippeaux's FHA retaliation claim.  The district court held that Philippeaux established his *prima facie* case of retaliation under the FHA but failed to show that defendants' legitimate, nondiscriminatory reasons for not renewing his lease were pretextual.    Accordingly, the district court denied Philippeaux's motion for summary judgment and granted summary judgment to defendants.  Philippeaux timely appealed.

## II.    Discussion

Philippeaux appeals (1) the dismissal of his ADA retaliation claim, (2) the dismissal of his IIED claim, and (3) summary

---

[3] Following the filing of Philippeaux's original complaint, defendants moved to dismiss Philippeaux's ADA retaliation claim for failure to state a claim, and the district court granted the motion and dismissed the claim with prejudice after concluding that the Monarc was not a place of public accommodation, and, therefore, not subject to Title III of the ADA.  Although the dismissal was with prejudice, Philippeaux nevertheless reasserted the ADA claim in his amended complaint, and the defendants again moved to dismiss, citing the court's prior ruling.

judgment in defendants' favor on his FHA claim.  Philippeaux also argues on appeal that defendants violated discovery orders.  We address each issue in turn.

A.    *Philippeaux abandoned the argument that the Monarc is a public accommodation under the ADA*

Philippeaux argues that the district court erred by dismissing his ADA retaliation claim because he plausibly alleged a causal connection between ADA-protected activity and the non-renewal of his lease.   Defendants respond that Philippeaux does not challenge the district court's reason for dismissing his ADA retaliation claim, which was that Title III of the ADA does not apply to Philippeaux's residential apartment building.   Thus, according to defendants, Philippeaux has abandoned this issue. Philippeaux replies that the Monarc is a public accommodation to which the ADA applies.

We review a district court's dismissal for failure to state a claim *de novo*.  *See Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019).  Where, as here, the plaintiff proceeds *pro se*, we construe his allegations liberally.  *Mitchell v. Peoples*, 10 F.4th 1226, 1229 (11th Cir. 2021).  But although "we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned."  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (internal citation omitted).  "Moreover, we do not address arguments raised for the first time in a *pro se* litigant's reply brief."  *Id*.  A party also abandons an issue if he "fails to challenge properly on appeal one of the grounds on which the

district court based its judgment." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

The district court dismissed Philippeaux's ADA claim after holding that the ADA does not apply to the Monarc because the Monarc is not a place of public accommodation. *See* 42 U.S.C. § 12182(a) (extending Title III of the ADA's protections only to "place[s] of public accommodation"). In his opening brief, however, Philippeaux argues only that he plausibly alleged retaliation under the ADA; he does not address whether the ADA applies to the Monarc. Thus, Philippeaux "fails to challenge properly on appeal . . . the ground[] on which the district court based its judgment." *Sapuppo*, 739 F.3d at 680. And while Philippeaux argues that the ADA applies to the Monarc in his reply brief, we have already established that "we do not address arguments raised for the first time in a *pro se* litigant's reply brief." *Timson*, 518 F.3d at 874. Accordingly, Philippeaux abandoned this argument. *Sapuppo*, 739 F.3d at 680.

> B.    *Philippeaux failed to plausibly allege outrageous conduct necessary to maintain an IIED claim*

Philippeaux argues that he plausibly alleged outrageous conduct by alleging that defendants (1) communicated with his movers, which "resulted in the moving company confiscating and taking hostage" Philippeaux's belongings; (2) locked Philippeaux out of his apartment "on several occasions"; (3) threw him out of the leasing office; (4) caused "a loud alarm to sound in the lobby"

while Philippeaux was present, which "aggravat[ed] the residual symptoms of his traumatic brain injury"; and (5) defamed him.

In reviewing a district court's dismissal for failure to state a claim, we can consider "documents attached to a complaint or incorporated in the complaint by reference." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014). We do not, however, consider "an issue not raised in the district court and raised for the first time in an appeal." *VFS Leasing Co. v. Markel Ins. Co.*, 120 F.4th 745, 749 (11th Cir. 2024).

"As a federal court assessing a state-law claim, we are bound to look to Florida law to determine whether [Philippeaux's] IIED claim was properly dismissed." *Lopez v. Target Corp.*, 676 F.3d 1230, 1235–36 (11th Cir. 2012) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under Florida law, the elements of an IIED claim are:

> (1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;
>
> (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;
>
> (3) the conduct caused emotional distress; and
>
> (4) the emotional distress was severe.

*Glegg v. Van Den Hurk*, 379 So. 3d 1171, 1174 (Fla. 4th DCA 2024).

The second element, whether "conduct is sufficiently outrageous enough to support an IIED claim[,] is a question of law, not a question of fact." *Id.* "In applying that standard, the subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort of intentional infliction of emotional distress occurred." *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007). "Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is atrocious, and utterly intolerable in a civilized community." *Id.* (quotations omitted). A party is not liable for IIED "where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985) (quotations omitted).

In Philippeaux's amended complaint, he alleged that defendants' "conduct is outrageous, reckless, causing Mr. Philippeaux emotional distress so severe that it could be expected to adversely affect and aggravate his mental health status" and cites the non-renewal of his lease in support. Philippeaux's allegation of outrageousness is a legal conclusion we need not accept. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Glegg*, 379 So. 3d at 1174. Instead, Philippeaux's lease[4] explained that defendants had a

---

[4] Neither Philippeaux nor defendants produced Philippeaux's lease at the motion-to-dismiss stage. Philippeaux, however, attached the notice of non-renewal of his lease, which quotes the relevant portions of Philippeaux's lease,

legal right not to renew Philippeaux's lease.  Thus, defendants did "no more than to insist upon [their] legal rights in a permissible way" when they elected not to renew Philippeaux's lease.  *Metro. Life Ins. Co.*, 467 So. 2d at 278 (quotation omitted).  We must therefore conclude that Philippeaux's lease non-renewal was not, as a matter of law, "atrocious, and utterly intolerable in a civilized community."  *Liberty Mut. Ins. Co.*, 968 So. 2d at 595 (quotations omitted).

On appeal, Philippeaux also argues that defendants' outrageous conduct included communicating with his movers "during the eviction process [which] resulted in the moving company confiscating and taking hostage" Philippeaux's belongings.[5]  Philippeaux, however, only alleged that Fothergill supervised Philippeaux's move and asked Philippeaux's movers "the name of the moving company and the location of their place of business."  Otherwise, Philippeaux failed to plausibly connect Fothergill's interactions with his movers to the movers' alleged confiscation of Philippeaux's things.  Instead, Philippeaux merely stated that "[i]t appears that the moving company became aware" of Philippeaux's lawsuit against defendants.  "But after *Twombly* and *Iqbal*, this speculation does not state a claim."  *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712 (11th Cir. 2014); *see Ashcroft*

---

to his amended complaint.  We may consider that exhibit.  *See Saunders*, 766 F.3d at 1270.

[5] Philippeaux included these allegations in his amended complaint, albeit not with his IIED allegations.

*v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Philippeaux did not allege, for example, that Fothergill instructed his movers to confiscate his belongings. Thus, Philippeaux's allegations about Fothergill's communications with his movers do not plausibly allege outrageous conduct in support of his IIED claim.

Philippeaux also argues that defendants' outrageous conduct included locking him out of his apartment, throwing him out of the leasing office, causing an alarm to sound in the apartment lobby, and defaming him. These allegations, however, do not appear in Philippeaux's amended complaint. Philippeaux also did not mention these allegations in response to defendants' motion to dismiss his amended complaint. Accordingly, we do not consider these allegations. *VFS Leasing Co.*, 120 F.4th at 749. Thus, we conclude that Philippeaux failed to plausibly allege an IIED claim under Florida law.

C.    *Philippeaux failed to rebut defendants' legitimate, non-retaliatory reasons for not renewing Philippeaux's lease*

Philippeaux argues that the district court erred by granting summary judgment to defendants on his FHA retaliation claim. In particular, Philippeaux argues that the temporal proximity between his protected activity (filing the August 2021 lawsuit) and the non-renewal of his lease suffices to make out his *prima facie* case, and defendants' legitimate, non-retaliatory reasons for not

renewing his lease are pretextual and were manufactured for litigation.

"We review *de novo* a district court's grant of summary judgment, applying the same standard as the district court." *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208, 1214 (11th Cir. 2024) (quotation omitted). "Namely, summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

The FHA's anti-retaliation provision prohibits "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the FHA. 42 U.S.C. § 3617. Although we have not articulated the elements of a *prima facie* FHA-retaliation case in published caselaw, we have explained that when interpreting the FHA, we "look to cases interpreting Title VII [of the Civil Rights Act of 1964]." *Fox v. Gaines*, 4 F.4th 1293, 1296 (11th Cir. 2021). Accordingly, it follows that to establish a *prima facie* case of retaliation under the FHA, Philippeaux must demonstrate that (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) there is a causal link between the adverse action and the protected conduct. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).

When, as here, a retaliation claim "relies only on circumstantial evidence, we evaluate [the] retaliation claim under the *McDonnell Douglas*[6] burden-shifting framework." *Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021). Thus, once the plaintiff establishes his *prima facie* case, "the burden shifts to the defendant to articulate legitimate [non-retaliatory] reasons for the adverse action. If the defendant meets that burden, the plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the defendant's proffered [non-retaliatory] reasons is pretextual to avoid summary judgment." *Id.* (alteration adopted) (quotations and internal citation omitted). In so doing, the plaintiff must show "*both* that the reason was false, *and* that [retaliation] was the real reason" for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).

The district court held that Philippeaux had established his *prima facie* case of retaliation under the FHA. Defendants do not challenge this holding on appeal. Accordingly, we assume without deciding that Philippeaux established his *prima facie* case of retaliation and turn to whether defendants articulated a legitimate, non-retaliatory reason for not renewing Philippeaux's lease.[7]

---

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[7] Since we need not decide whether Philippeaux established a *prima facie* case of retaliation under the FHA, we do not address Philippeaux's arguments that he sufficiently established his *prima facie* case through the temporal proximity between his protected conduct and defendants' adverse action.

Defendants have met their burden on this issue. Defendants asserted that they received multiple complaints from other Monarc residents and staff about Philippeaux loitering in the Monarc's common areas and making other residents feel uncomfortable. Defendants warned Philippeaux that he needed to change his behavior or else defendants would seek to terminate his lease. Defendants explained that they did not renew Philippeaux's lease because of other residents' persistent complaints about him and his rude behavior towards Fothergill, which included banging on the leasing office windows and raising his voice at her. Accordingly, defendants articulated legitimate, non-retaliatory reasons for not renewing Philippeaux's lease. We next turn to whether Philippeaux demonstrated that defendants' reasons were pretextual.

Philippeaux argues that defendants fabricated the November and March lease-violation letters in preparation for litigation. Philippeaux, however, cites no evidence to support his argument. Moreover, as discussed, Philippeaux's own testimony partially corroborated the contents of the letters. Thus, Philippeaux failed to "produce sufficient evidence for a reasonable factfinder to conclude" that defendants' legitimate, non-retaliatory reasons for not renewing his lease were false and that the real reason was unlawful retaliation. *Ring*, 4 F.4th at 1163; *St. Mary's Honor Ctr.*, 509 U.S. at 515. Accordingly, the district court properly

18                    Opinion of the Court                    24-11468

granted summary judgment to defendants.  *See Ring*, 4 F.4th at 1163–64.[8]

###    D.    *Defendants did not violate discovery orders*

Finally, Philippeaux argues that defendants violated the district court's discovery orders which prejudiced Philippeaux's ability to present his case.  Defendants respond that the district court never entered a discovery order they could have violated.  Consistent with defendants' argument, the district court docket reflects that Philippeaux filed one motion to compel, which the district court struck.  Indeed, the district court observed that it "never entered—and thus defendants never violated—an order requiring the defendants to provide additional documents." Accordingly, Philippeaux's argument fails.

---

[8] To the extent Philippeaux argues that he has demonstrated pretext via the temporal proximity between his protected conduct and defendants' adverse action, this argument also fails.  We have explained in the Title VII context that "[w]hile close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient."  *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1137 n.15 (11th Cir. 2020) (*en banc*).  And as discussed, "[w]hen interpreting the FHA, we . . . look to cases interpreting Title VII, which uses language virtually identical to the FHA's."  *Fox*, 4 F.4th at 1296. Thus, because Philippeaux fails to cite any "other evidence" of pretext, his argument based on "temporal proximity alone is insufficient."  *Gogel*, 967 F.3d at 1137 n.15.

### III.    Conclusion

For the foregoing reasons, we affirm the district court's dismissal of Philippeaux's ADA and IIED claims and grant of summary judgment on Philippeaux's FHA claim to defendants.

**AFFIRMED.**